**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RICHARD SHETRON,**

                        **Plaintiff,**

        **v.**                                          **1:05-CV-280**
                                                                 **(FJS/DRH)**

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**
_____

**APPEARANCES**                                       **OF COUNSEL**

**ERWIN, MCCANE & DALY**                   **THOMAS C. ERWIN, ESQ.**
23 Elk Street
Albany, New York 12207
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **DENNIS J. CANNING, ESQ.**
**OFFICE OF REGIONAL GENERAL**
**COUNSEL, REGION II**
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**OFFICE OF THE UNITED**                 **WILLIAM H. PEASE, AUSA**
**STATES ATTORNEY**
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Currently before the Court is Magistrate Judge Homer's November 27, 2006 Report-

Recommendation and Order and Plaintiff's objections thereto.[1]

## II. BACKGROUND

Plaintiff filed an application for disability insurance benefits on December 17, 2002, alleging that he had been disabled since July 1, 2002, due to joint problems, diabetes, diabetic retinopathy, and binocular glaucoma. *See* Administrative Transcript ("Tr.") at 15, 59-61. Plaintiff's application was initially denied. *See id.* at 28-30. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 13, 2004, before ALJ John J. Mulrooney II. *See id.* at 15, 34. On June 10, 2004, the ALJ issued a decision in which he held that Plaintiff was not entitled to disability benefits. *See id.* at 22. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on January 27, 2005. *See id.* at 4-6.

On March 3, 2005, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) for judicial review of that final decision. In support of his argument that the Court should reverse Defendant's decision and award him benefits, Plaintiff asserted that (1) the ALJ erred when he failed to develop the record fully regarding Plaintiff's alleged severe depression; (2) the ALJ erred in assessing the severity of Plaintiff's impairments; (3) the ALJ failed to evaluate Plaintiff's credibility properly; and (4) the substantial evidence in the record did not support the ALJ's residual functional capacity ("RFC") assessment and conclusion that Plaintiff was not disabled.

On November 27, 2006, Magistrate Judge Homer issued his Report-Recommendation and

---

[1] Although Mr. Erwin remains counsel of record, it appears that Plaintiff filed his objections without assistance of counsel.

Order, in which he recommended that this Court affirm Defendant's decision denying Plaintiff disability benefits. *See* Report-Recommendation and Order at 14.

Plaintiff objects generally to Magistrate Judge Homer's recommendation. Although not entirely clear, it appears that Plaintiff's argument is that Magistrate Judge Homer erred in affirming the ALJ's conclusion that Plaintiff had the RFC to perform his past relevant work, given the variety of problems he has with his vision, gait, and pain. *See* Plaintiff's Objections at 1.

### III. DISCUSSION

**A.    Disability determination**

To be considered disabled, a plaintiff seeking disability insurance benefits must establish that he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work. . . .

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 404.1520 and

§ 416.920, to evaluate disability insurance claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *See id.*

**B.  Scope of review**

In reviewing the Commissioner's final decision, a court must determine whether the Commissioner applied the correct legal standards and whether there is substantial evidence in the record as a whole to support the decision. *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)) (other citations omitted). A reviewing court, however, may not affirm an ALJ's decision if it reasonably doubts that the ALJ applied the proper legal standards even if it appears that there is substantial evidence

to support that decision. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports his decision. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted). A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support that decision. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991) (citations omitted). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quotation omitted). "It is more than a mere scintilla or a touch of proof here and there in the record." *Id.*

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Id.* (citations omitted). "However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision." *Lewis v. Comm'r of Soc. Sec.*, No. 6:00 CV 1225, 2005 WL 1899399, *1 (N.D.N.Y. Aug. 2, 2005) (citations omitted).

Finally, in a case such as this one in which a magistrate judge has issued a Report-Recommendation and Order and a party properly files objections to that report, "the district court shall make a *de novo* determination of those portions of the report to which the objections are made[,]" 28 U.S.C. § 636(b)(1)(C), and shall review those portions of the report to which neither party objects for clear error, *see Turly v. Britton*, No. 9:03-CV-1425, 2007 WL 625983, *2

(N.D.N.Y. Feb. 24, 2007).

### C.   Magistrate Judge Homer's findings and recommendation

In determining whether there was substantial evidence in the record to support the Commissioner's decision, Magistrate Judge Homer reviewed the ALJ's development of the record, Plaintiff's subjective complaints of pain, the severity of Plaintiff's conditions, and Plaintiff's RFC.  First, Magistrate Judge Homer rejected Plaintiff's argument that the ALJ did not fully develop the record regarding Plaintiff's allegedly severe depression.  *See* Report-Recommendation and Order at 7.  Magistrate Judge Homer noted that, although Plaintiff contended "that the ALJ should have requested further development of the record because it 'contains numerous references to the claimant's history of depression and its negative impact on his ability to perform work[,]'" Plaintiff "failed to cite to any of these 'numerous references' in the record and a review of the record demonstrate[d] only that [Plaintiff's] depression was mentioned but not discussed as a severe impairment that affected his ability to work." *See id.* at 6-7 (citing T. 123, 214, 309).  Therefore, Magistrate Judge Homer concluded that Plaintiff's argument that the ALJ did not fully develop the record regarding this issue was without merit.  *See id.* at 7.

With regard to the ALJ's findings regarding Plaintiff's complaints of disabling pain, Magistrate Judge Homer noted that the ALJ had concluded that these allegations were "'not fully credible and [were] not consistent with the clinical and objective findings, the claimant's self-reported activities or daily living, his ongoing work activity, his overall testimony and the other evidence of record.'"  *See id.* at 9 (quoting T. 22).  After reviewing the record, Magistrate Judge Homer concluded that there was substantial evidence to support the ALJ's credibility

determination. Specifically, Magistrate Judge Homer noted that Dr. Kerlinsky, who had examined Plaintiff in February 2003, had concluded that "he had only a 'moderate restriction for prolonged standing, walking, and climbing as well as for activities requiring fine visual acuity' . . . [and had] noted that [Plaintiff] appeared to be in 'no acute distress' and had full range of motion of all joints except the left hip." *See id.* at 9 (quoting T. 217, 214-16). Magistrate Judge Homer also noted that Plaintiff had stated that "he lived alone, cared for his personal needs, watched television, rode an exercise bike, used the computer, and could drive a car . . . [and] continued to work on independent computer software projects. *See id.* (citing T. 18-19, 88-98, 290, 299-300, 302, 19, 291-92).

With respect to the severity of Plaintiff's impairments, Magistrate Judge Homer noted that the ALJ had concluded that

> "the medical evidence establishes that [Plaintiff] has severe impairments consisting of obesity, insulin dependent diabetes mellitus, diabetic retinopathy, glaucoma, bursitis/osteoarthritis of the hips, Osgood-Schlatter disease, coronary artery disease, hypertension, hyperlipidemia and chronic onychomycosis, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4."

*See id.* at 11 (quoting T. 21).

Magistrate Judge Homer concluded that there was substantial evidence in the record to support the ALJ's conclusion – specifically, (1) the examinations of Drs. Kerlinsky and Jain, who found that Plaintiff had "a normal gait with upper and lower extremity strength, a full range of motion of the peripheral joints, a regular heart rate and rhythm with no murmurs, intact hand/finger dexterity, and no significant varicosities or trophic changes of the lower extremities,"

(2) Dr. Cheng's determination that Plaintiff's "visual acuity with correction was 20/50+2 and 20/25-2, OS," and (3) that "'no medical source of record had opined that . . . [Plaintiff's] impairments meet or equal a listed impairment." *See id.* (quoting T. 16) (citing T. 214-18, 256-61, 248).

Finally, with respect to the ALJ's RFC determination, Magistrate Judge Homer found that there was substantial evidence in the record to support the ALJ's conclusion that Plaintiff's "impairments did not prevent him from performing his past relevant work . . . [and that Plaintiff] had the RFC to perform work-related functions . . . ." *See id.* at 12 (citing T. 22). Furthermore, Magistrate Judge Homer rejected Plaintiff's argument "that the ALJ ignored 'uncontradicted medical evidence in the record' that support[ed] his disability claim." *See id.* at 13 (quoting Pl. Mem. of Law at 10). He noted that, "[a]lthough it [was] unclear from [Plaintiff's] brief, [Plaintiff] appear[ed] to rely on the reports of Drs. Katz and Kerlinsky to support this contention." *See id.*

With respect to these reports, Magistrate Judge Homer noted that, "[i]n April 2002, Dr. Katz observed that [Plaintiff] had a diminished range of motion and a 'moderate disability' . . . [and that] [i]n February 2003, Dr. Kerlinsky concluded that [Plaintiff] had a 'moderate restriction for prolonged standing, walking and climbing as well as for activities requiring fine visual acuity.'" *See id.* (quoting T. 109, 217). However, Magistrate Judge Homer also pointed out that the ALJ had noted that "Dr. Katz failed to complete an RFC assessment of [Plaintiff] and there [was] no evidence that Dr. Katz ha[d] treated [Plaintiff] since April 2002." *See id.* (citing T. 20). He also noted that the ALJ had indicated that "a February 2003 examination by Dr. Siebeneck revealed that [Plaintiff] had a normal gait with intact sensation . . . [and that] Dr. Kerlinsky's

opinion regarding [Plaintiff's] visual acuity was contradicted by Dr. Cheng . . . [who] concluded that [Plaintiff] had no visual limitations and had corrected visual acuity of 20/50+2 OD and 20/25-2 OS with no evidence of recurrent macula edema." *See id.* (citing T. 20, 251). Finally, Magistrate Judge Homer pointed out that "the ALJ noted that the state agency physician who evaluated [Plaintiff] concluded that he retained the RFC to perform light work." *See id.* (citing T. 20, 221-26). Based upon this record evidence, Magistrate Judge Homer concluded that "there [was] substantial evidence to support the ALJ's conclusion that Drs. Katz and Kerlinsky's assessments were inconsistent with the medical evidence in the record." *See id.*

### D. Plaintiff's objections

Plaintiff objects generally to Section V, "Discussion," of Magistrate Judge Homer's Report-Recommendation and Order. *See* Plaintiff's Objections at 6. Although it is not entirely clear, Plaintiff appears to argue that Magistrate Judge Homer erred when he accepted the ALJ's finding that Plaintiff had the RFC to perform his past relevant work, given the variety of problems that Plaintiff has with his vision, gait and pain. *See id.* at 1.

With regard to his vision, Plaintiff asserts that he suffers from above-average eyestrain, eye and body fatigue and has difficulty reading and concentrating due to an incorrect diagnosis of his vision acuity. *See id.* at 1-2. He also contends that an unsuccessful laser eye surgery, which was intended to correct his diabetic retinopathy, destroyed much of his vision. *See id.*

With respect to his gait, Plaintiff claims that his gait was classified as normal because both of his leg joints were painful, thus equalizing his gait. *See id.* at 3. In addition, Plaintiff argues that his pain levels vary and that merely turning, moving or bumping into things the

wrong way causes pain that leaves him nonfunctional.  *See id.*  He also alleges that past pain medications have been unsuccessful in alleviating his pain and have caused unpleasant side effects.  *See id.*  Plaintiff notes that he has interpreted the severity of his pain based on information that he researched on the Internet.  *See id.* (citing Attachment 2).

In addition, Plaintiff describes the limitations he suffers in normal activities, e.g., listening to the television when his eyes bother him, showering only two or three times per week, and cooking only when having access to a dishwasher.  *See id.* at 4-5.  Socially, Plaintiff argues that his disability has forced him to leave several organizations at Rensselaer Polytechnic Institute and to stop volunteering for non-profit literary organizations.  *See id.* at 5.

Finally, Plaintiff points to other items to support his objections, including a discrepancy in the Report-Recommendation and Order about how much weight he can lift, a doctor's determination that his physical abilities range from limited to very limited, and his diagnoses of extreme sleep apnea, carpel tunnel, ulna nerve, and tennis elbow.  *See id.* at 5-6.  He also contends that Vocation and Educational Services for Individuals with Disabilities ("VESID") has determined that he has too many medical/health problems to work.  *See id*. at 6.

At their core, all of Plaintiff's objections are aimed at the ALJ's RFC determination.  RFC describes what tasks a claimant is capable of performing despite his impairments.  An ALJ determines a claimant's RFC by considering all relevant evidence, including physical and mental abilities, symptoms, and limitations beyond those symptoms.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945.  Furthermore, an ALJ uses a claimant's RFC to determine if a claimant can perform his past relevant work in the national economy.  *See New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545,

416.960.

After reviewing the medical evidence, it is clear that the record does not support Plaintiff's argument that he does not have the RFC to perform his past relevant work due to his vision, gait, and pain problems. Specifically, Drs. Cheng, Siebeneck, Jain, and Wakely, who either examined Plaintiff or reviewed his medical records between December 2002 and February 2004, collectively determined that Plaintiff had a functional corrected vision, had no limitations in his physical abilities, had no gross abnormalities or deformities, had a full range of motion in his peripheral joints, had no documented sensory deficits, walked with a normal gait, could lift up to twenty pounds, and could sit, stand and walk for six hours. *See* Tr. at 188-89, 219, 248, 256-58, 279.

In addition to the medical evidence, the record demonstrates that Plaintiff continued to work on independent computer software projects after filing for disability benefits. *See* Tr. at 19, 291-92. The fact that Plaintiff was willing and able to perform such work negates his claim that he did not have the RFC to perform his past relevant work as a consultant, user support analyst, computer systems engineer, computer analyst, and president of an Internet service provider. *See id.* at 16, 59.

Therefore, based upon the record, the Court finds that Magistrate Judge Homer did not err in affirming Defendant's decision that Plaintiff was not disabled within the meaning of the Social Security Act.

## IV. CONCLUSION

Accordingly, after considering the entire record in this case, Magistrate Judge Homer's

Report-Recommendation and Order, and Plaintiff's objections thereto, as well as the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Homer's November 27, 2006 Report-Recommendation and Order is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: August 19, 2008
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge